**Robert Tom FREEMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 40523.**

Court of Criminal Appeals of Texas.

July 26, 1967.

Herbert H. Landau, Dallas, for appellant.

Henry Wade, Dist. Atty., Don Koons, Charles Caperton and Kerry L. FitzGerald, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

OPINION

BELCHER, Judge.

The conviction is for felony theft; the punishment, seven years.

The appellant challenges the sufficiency of the evidence to sustain the conviction.

The indictment alleged that the appellant on or about the 27th day of June, 1965, fraudulently took 13 pairs of men's shoes of over the value of fifty dollars from the possession of A. F. Grimes.

Officer Tilley, while testifying, identified the appellant as the man he saw across the

street about 12:30 a. m., June 27, walking and carrying a large box, and on turning his car toward him, the appellant looked in his direction, dropped the box and continued walking; that he approached the appellant and asked what was in the box and he replied, "what box?"; that after he found in the box 13 new pairs of Guardsman men's shoes which appeared to have been made in Plymouth, he arrested the appellant, checked out his story, and took him to the city hall; that they marked the box and shoes and placed a tag on the box bearing the appellant's "name, race, sex and age, and address" for identification; that the arrest occurred about 300 yards from a warehouse; and that he (Tilley) had no further connection with the investigation.

B. L. Mullonax, warehouse foreman, testified that he supervised the unloading of merchandise and preparing it for delivery; that two officers were at the warehouse when he arrived at 1 a. m., June 27, and on checking the warehouse they found no evidence of any forcible entry, but they found two men in a trailer docked against a warehouse door, which contained general merchandise; and that he gave no one consent to enter the warehouse or trailers and take any merchandise.

A. F. Grimes testified that on June 27, 1965, he was the terminal manager of the T. P. Ry. and T. P. Trs. Co., consisting of a one-block long building, freight cars, trucks and trailers, and the merchandise in them, which were under his care, control, and management. He further testified as follows:

"Q   All right, sir. State the facts with reference to whether or not some shoes were taken from the warehouse on the evening of June 27th, 1965?

"The Court: Just a minute.

"Appellant's Counsel: Your Honor, I object to the question and I certainly object to any answer he may

give unless he himself saw somebody.

"State's Counsel: You can answer.

"The Court: You would have to testify if you know they were taken.

"Appellant's Counsel: Whatever he might have heard would be hearsay, Your Honor.

"The Court: I'm telling the witness he can only testify to what he knows.

"Appellant's Counsel: If he knows of his own personal knowledge, on his own personal observation, then I would have no objection.

"Q   (Continuing) If you know the shoes were taken, you may answer the question.

"A   Well, I don't know just exactly where I stand, I do know that the shoes were taken but I did not see the shoes.

"Appellant's Counsel: Your Honor, on that ground, I object.

"The Court: Overruled.  He hasn't testified who took it, he just testified he knows they were taken.

"Q   (Continuing) Were the shoes your corporeal personal property?

"A   Yes, sir.

"Q   And, were they taken from your possession and without your consent?

"A   Yes, sir.

"State's Counsel: Pass the witness.

"The Court: Cross Examination.

CROSS EXAMINATION

BY APPELLANT'S COUNSEL:

"Q   Mr. Grimes, when you said that some shoes were taken from your possession now, you did not see this

yourself with your own eyes, is that correct?

"A  No, sir.

"Q  In other words, whatever might have been taken was related to you from someone else's mouth, isn't that correct?

"A  Yes, sir.

"Q  In other words, you're relating something that someone else told you happened, is that correct?

"A  That is true.

"Appellant's Counsel: Your Honor, at this time, I again move that his testimony in regards to that be stricken from the record.

"The Court: Overruled.

"Appellant's Counsel: Notice our exception.

 *    *    *    *    *    *

"Q  (Continuing) From your own observation, did you yourself see anybody take anything from either the Texas Railroad property or the Texas & Pacific Motor Freight property?

"A  No, sir.

 *    *    *    *    *    *

"Q  (Continuing) Now, you said shoes were taken, is that right?

"A  Yes, sir.

"Q  Now, that is what somebody told you was taken, isn't that correct?

"A  Yes, sir.

"Q  In other words, you did not see it with your own eyes whether there were shoes or something else taken?

"A  No, I did not see it personally.

"Q  I see. Your Honor, I again move the Court to strike it from the record, the testimony.

"The Court: Overruled.

"Appellant's Counsel: Notice our exception.

 *    *    *    *    *    *

"Q  Let me ask you this Mr. Grimes, if you answered this please tell me whether you did? This particular merchandise that was taken, do you know from your own observation whether it was taken from Texas Railroad? Is there a dock, Texas Railroad dock or something like that?

"A  Well, it would be this particular place. It would be a warehouse and from a trailer it would come out of a trailer.

"Q  I see. You didn't see it come out of a trailer with your own eyes?

"A  No, sir, I did not."

W. E. Gaskins testified that he was in charge of freight transportation for Universal Carloading and Distributing Company, and the merchandise shipped to Texas P. Warehouse where it was unloaded and distributed. He further testified as follows:

"Q  All right, sir, now you are aware, are you not, of a shipment of shoes that was delivered to the T & P Warehouse on or about June 27th, 1965?

"Appellant's Counsel: I object to the term, 'aware'—

"The Court: That's a proper question if he knows.

"Q  (By Appellant's Counsel) Do you know sir?

"A  Yes, sir.

"Q  Was that shipment of shoes that was in the warehouse on that date was that some of the merchandise that

you contracted with the T & P for—

"A —One of the piggyback trailers.

"Q Was that merchandise or had it arrived and was it there at the warehouse on June 27, 1965?

"A It was reported to me it was at the warehouse.

"Appellant's Counsel: Your Honor, on that ground, we object. It is hearsay; he did know of his own knowledge.

"The Court: Just testify to what you know of your own knowledge.

"Appellant's Counsel: I ask the Court to instruct the jury to disregard it and strike that last remark from the record.

"The Court: Of course the answer would reflect hearsay.

"Appellant's Counsel: Yes, sir.

"The Court: Somebody told him, I sustain the objection.

"Appellant's Counsel: Thank you, Your Honor.

"Q (State's Counsel) Mr. Gaskins, then I'll ask you whether or not you had an occasion on or after June 27, 1965 to look into a theft matter?

"A Yes, I did, sir.

"Q All right. Did that involve some shoes?

"A Yes, sir.

"Q And what type of shoes was it that was involved?

"A These were shoes shipped from the Plymouth Shoe Company in Massachusetts for the—

"Appellant's Counsel: Your Honor, at this time. I apologize for the con-

stant objections but to protect my client, I must object to that as to where they came unless he himself knows, if he shipped them himself.

"State's Counsel: He doesn't have to ship them to know where they came from, sir.

"State's Counsel: Judge, let me ask another question or two.

"The Court: Bill of Lading or something else.

"Q (Continuing) Do you have any of the records of your firm and the shipments and so forth under your care, custody and control?

"A Yes, sir, we keep a record of the shipments. In fact, there is about nine copies of each shipment that comes into the warehouse of the freight bill. Each individual shipment, a freight bill is made on it and so forth.

"Q All right, sir. Now, these shoes in question, were there some records on those?

"A Yes, sir.

"Q And, did you have an occasion to look at those records?

"A I looked at the freight bill, sir.

"Q By that I mean on or about June 27 of 1965 or shortly thereafter?

"A Yes, sir.

"Q Were those the official records of your business?

"A Yes.

"Q Are they kept on a day to day basis?

"A Yes, sir.

"Q All right. Those records, now you say, did you look at them at the

time. What was the nature of the records?

"Appellant's Counsel: Your Honor, I object on the grounds that the records speak for themselves.

"The Court: Yea. That would be a good objection. Do you have the records with you?

"The Witness: No, sir, I don't sir.

"The Court: The records would be the best evidence unless they have been lost or destroyed or stolen.

"Q (Continuing) Did you have an occasion to go down to the Police Station at any time, Mr. Gaskins?

"A Yes, sir, I did.

"Q When was that if you recall?

"A I don't recall the date. It was after the robbery and they called me down there to come to the police property room to look over the merchandise that was down there.

"Appellant's Counsel: Your Honor, I object to this again as being hearsay. What somebody told him to do and on that ground I ask you to instruct the jury—

"The Court: You said you went down to the Police Department?

"Appellant's Counsel: Somebody told him to go down?

"The Court: Overrule.

"Appellant's Counsel: Notice our exception.

"Q (Continuing) And, did you go down and look at some merchandise down there at the Police Department property room?

"A Yes, sir.

"Q What was the property that you looked at?

"A I looked at a case of shoes and a couple cartons of lamps, if I recall all right and a carton of furniture, table leaves or something of that nature but it was furniture.

"Q All right, sir. Now, further for the purpose of connection and identification only, I'll ask you whether or not, first just answer yes or no, whether or not you noticed any identifying tags or marks on the box that you looked at?

"A Yes, I did.

"Q Would you state, well, for instance, was the name of the Defendant, Robert Thomas Freeman, on the carton.

"Appellant's Counsel: Your Honor, I object.

"The Court: Just a minute.

"Appellant's Counsel: I object on the grounds that whatever he has or read or anything would be hearsay and I object to that on the grounds of what he saw or somebody had written—

"The Court: Overrule.

"Appellant's Counsel: Notice our exception.

"Q (Continuing) Was that name on the carton of shoes that you looked at?

"A I believe it was, yes, sir.

"Q All right. Did it have a date on it?

"A That I don't remember, sir.

"Q All right, sir. Did it have any words on it about any criminal charges, just yes or no.

"A No.

"Q Now, was this after June 27, 1965, that you went down to look at those shoes?

"A It was after that.

"Q It was after it?

"A After it had been reported to me that the merchandise had been stolen from the truck.

"Q All right. Now, did you have an occasion to examine the shoes themselves?

"A I looked at the box, yes sir.

"Q What kind of shoes was in the box?

"A They were men's dress shoes.

"Q Did they have a brand on them?

"A Yes, sir.

"Appellant's Counsel: I object to what he might know. What a brand name is.

"The Court: Overrule.

"Appellant's Counsel: Notice our exception.

"Q (Continuing) You may answer the question.

"A They were shoes as I say, men's dress shoes, manufactured by the Plymouth Shoe Company.

"Appellant's Counsel: Your Honor, I object.

"State's Counsel: He can testify as to what he saw.

"The Witness: Sir, I didn't examine the individual shoes in the box.

"The Court: Well, just testify to what you saw there in the box, whatever it was.

"Q (Continuing) You did examine it?

"A I examined the box, yes, and the outer carton of the box.

"Q All right, sir, and were you able to determine from your examination of that after you looked at the shoes whether or not those were the shoes that you, through your company, had shipped to the warehouse?

"A Yes, sir. From my freight bill.

"Appellant's Counsel: Your Honor, I object to that on the grounds of whatever he heard is hearsay from his freight bills. The freight bills speak for themselves. Whatever record, whatever he testifies to he saw on somebody else's papers or heard is strictly hearsay.

"The Court: Overrule.

"Appellant's Counsel: Notice our exception."

CROSS EXAMINATION

"Q Now, whatever the information you got as to where those alleged shoes that you saw down at the Police Station you got through intermediate sources, is that correct?

"A That's right, sir.

"Q Were you there at Gaston Avenue at the time that some alleged shoes were supposed to have been taken?

"A No, sir, I was not.

"Q You, yourself, wouldn't know who took it, from your own observation?

"A No, sir, it was reported to me.

"Q From your own observation you would not.

"A Yes, sir.

"Q All right. Now, for you to make a determination as to whether these shoes were taken from that area, you would have to resort to some other information, would you not?

"A Yes, sir.

**418**

"Q  That's how you would have made a determination?

"A  That's correct.

"Q  What people told you and said to you, is that correct?

"A  Yes, sir.

"Q  All right, so actually your determination of whether these shoes were the shoes that were out there was through these intermediate sources?

"A  Well, sir. If I could explain it to you.

"Q  No, sir, you'll have a chance later on to explain it.

"A  I see.

"Q  In other words, my question is, you determined that these shoes down at the Police Station were the ones taken from these places through intermediate sources?

"A  That is correct.

"Q  What people told you or what you read on some piece of paper or otherwise?

"A  Right.

"Q  All right. Now, you said you didn't see anybody take these alleged shoes from any of the property over there on Gaston Avenue?

"A  I was not there, sir.

"Q  Now, Your Honor, at this time I move the Court to strike from the record all the testimony of Mr. Gaskins as related to his identity of these shoes on the grounds that such identity was done on hearsay testimony and hearsay written instruments of some kind and I further ask the Court to instruct the jury to disregard all of the testimony along that line.

"The Court: Overrule the objection.

"Appellant's Counsel: Notice our exception."

The appellant did not testify or offer any evidence.

To support this conviction it is essential that the proof show by competent evidence that the shoes found in the box by the officers were stolen from the possession of A. F. Grimes in Dallas County as alleged.

■ It is well established that where property is alleged to have been stolen from a certain named and designated person, the proof must show beyond a reasonable doubt that such property belonged to the person from whom it is alleged to have been stolen. Unless the proof meets this requirement, a conviction cannot be sustained. Roberts v. State, 377 S.W.2d 656.

■ There is no competent evidence showing that the shoes found by the officers were ever in the warehouse, the trailer, or in the possession of A. F. Grimes. No invoices, freight bills, or bills of lading were shown or introduced in evidence.

The only evidence which points toward the commission of the offense by the appellant, after excluding the hearsay testimony to which the appellant timely and properly objected, is that the quantity and kind of shoes found in the box discarded by the appellant within 300 yards of a warehouse are of the same quantity and description, that is, "thirteen pair of mens shoes," as alleged in the indictment.

From the testimony of the witnesses Mullonax, Grimes, and Gaskins, it appears that they had the possession of information and reports pertaining to the shoes, but that they had very meager knowledge, if any, of the shoes origin, identity, or ownership. This character of information and report is not alone, sufficient to establish the facts necessary to support the conviction.

The evidence is insufficient to meet the requirements of the law that the guilt of the appellant must be established by legal and competent evidence beyond a reasonable doubt.

The judgment is reversed and the cause remanded.

## DISSENTING OPINION

WOODLEY, Presiding Judge.

I do not agree that the evidence is insufficient.

At the very time that appellant dropped the box containing 13 pairs of new men's shoes made by Plymouth Shoe Company in Massachusetts, a trailer that had brought a shipment of such shoes from the factory to Dallas by rail piggyback was parked at the warehouse nearby.

Appellant's only statement prior to his arrest was "what box." His "story" following his arrest was excluded when offered by the state. He did not see fit to testify or offer any evidence to account for his possession of the box of shoes and there was none before the jury save his statement "what box," which in effect was a denial that he had carried and dropped the box of shoes.

Some 30 minutes after appellant dropped the box of shoes, he was taken to the warehouse where the trailer that had been partially unloaded the day before was parked. Two unidentified men were in the trailer and the freight was "strewn all over the back of the trailer." Until the unloading was completed later in the morning and the merchandise in the shipment was checked, it could not be ascertained what was missing.

The defense elicited evidence that before taking appellant to the warehouse where the trailer was parked the arresting officers "checked" appellant's story, looked to see of shops in a certain area had been burglarized and conversed with the operator of a pool hall.

While it would have been preferable for the box of shoes dropped by appellant and taken to the police property room and the freight bill to have been introduced in evidence at the trial several months later, the evidence reveals that such box of shoes had been released from the property room and delivered to the factory's customer.

Gaskins' investigation was made within a short time after the box of shoes appellant dropped was taken to the police property room. His determination regarding the box of shoes was necessarily based upon information he obtained "from intermediate sources" such as the facts shown by the testimony of the witnesses Mullonax and Grimes and the freight bill.

I would affirm the conviction.